NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1260 c/w 07-1261

FLOYD ROBINSON, ET AL.

VERSUS

MELVIN G. GUILLOT, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, DOCKET NO. 82012 and DOCKET NO. 82945
HONORABLE GLENNON P. EVERETT, PRESIDING
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Michael G. Sullivan and Elizabeth A. Pickett, Judges.

AFFIRMED.

Rene S. Paysse, Jr.
Nicholas J. Chauvin
Johnson, Johnson, Barrios & Yacoubian
701 Poydras Street, Suite 4700
New Orleans, LA 70139-7708
(504) 528-3001
COUNSEL FOR APPELLANT:
        Alea London, Ltd.

Dale P. Martin
Martin Law Firm
3721 Highway 90 East
P.O. Box 506
Broussard, LA  70518
(337) 839-8814
COUNSEL FOR APPELLEES:
        Melvin G. Guillot and Ace Transportation, Inc.

**COOKS, Judge.**

The appellant, Alea London, Ltd., contends the trial court erred in granting the appellees' motion for summary judgment finding coverage for an accident was provided for under the Alea policy. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This suit arose from a vehicular accident that occurred on April 1, 2004, when a tractor/trailer owned and operated by Melvin Guillot collided with a Ford Focus driven by Camille Robinson, and in which Floyd and Matthew Robinson were passengers. Mr. Guillot used his tractor/trailer to make deliveries for Ace Transportation, Inc. the previous day, March 31, 2004. Upon completing his deliveries on that day, Mr. Guillot traveled to the University Medical Center in Lafayette to visit his wife, who was having heart trouble. Mr. Guillot then left University Medical Center in his tractor/trailer and drove to Cowboy's Bar where he parked the tractor/trailer in the parking lot. Later, his wife and son arrived at Cowboy's Bar and he rode in the family pick-up truck to his home in Church Point. The tractor/trailer was left in the parking lot at Cowboy's Bar. That same day, after sleeping and running some personal errands, Mr. Guillot returned to Cowboy's Bar to get his tractor/trailer. On the way back to his home in Church Point, the subject accident occurred.

The Robinsons filed suit against Mr. Guillot, Ace Transportation, Inc. (as Mr. Guillot's employer), and Alea London, Ltd. (as Mr. Guillot's non-trucking liability coverage insurer). The Robinsons' automobile liability insurer, Farm Bureau, filed a subrogation suit against Mr. Guillot seeking recovery of property damage and medical payments. Mr. Guillot filed a cross-claim against Alea, seeking defense,

indemnity, attorney fees, costs, penalties and expenses in connection with the litigation. All claims were settled at mediation and the sole remaining issue before the trial court was insurance coverage.

Alea acknowledged it issued a policy of insurance to Mr. Guillot, described as non-trucking liability coverage. The Alea policy provided "[A]ll vehicles must be permanently leased to a motor carrier in order to be eligible for the non-trucking liability." Mr. Guillot met this requirement with the lease to Ace. Alea asserted its policy did not provide coverage in this case as a result of the following language:

> V.   Exclusions
>
>   A.   This Insurance does not cover:
>
>   . . . .
>
>   10.   A covered automobile while returning from any location after carrying or hauling property, of any person or entity other than the Insured, until such time as the covered automobile is returned to its principle [sic] place of garage.

Alea argued its policy did not provide coverage because Mr. Guillot had not returned to his "principle [sic] place of garage" at the time of the subject accident. Thus, Alea filed a motion for summary judgment contending its policy did not provide coverage. Mr. Guillot and Ace Transportation also filed a motion for summary judgment asserting coverage was provided for under the Alea policy. After a hearing on the issue, the trial court granted Mr. Guillot's and Ace's motion for summary judgment and denied Alea's motion. This appeal followed.

**ANALYSIS**

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to

judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

Appellate courts review motions for summary judgments de novo, asking the same questions the trial court asks to determine whether summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. This inquiry seeks to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

Ace Transportation is a Louisiana corporation that possesses operating authority from the Federal Motor Carrier Safety Administration to provide contract transportation of goods by the use of vehicular equipment. Ace obtains this vehicular equipment through a lease agreement with the owners of the equipment. Ace had such a written lease agreement with Mr. Guillot. The responsibility for public liability insurance with respect to the vehicle provided that Ace was to provide such liability coverage while the vehicle was being used in the business of Ace. Mr. Guillot was responsible for providing public liability coverage for the operations of such vehicle and the driver thereof while the vehicle was not under dispatch by and not in use for the business of Ace. The lease between Ace and Mr. Guillot required Mr. Guillot to provide Ace with proof of such coverage in the form of a certificate of insurance. To comply with his obligations under the lease with Ace, Mr. Guillot procured from Alea a policy of insurance, commonly referred to as non-trucking liability coverage.

The record established that on March 31, 2004, Mr. Guillot was dispatched by

Ace to pick up a load of machinery in Lake Charles. This load was delivered to Fourchon at approximately 3:00 p.m. on that same day. While in Fourchon, Ace was able to arrange a return load of oilfield equipment to be delivered to Tubular Technology, located in Lafayette. Mr. Guillot arrived in Broussard around 11:15 p.m. that night and remained in his sleeper berth until 6:45 a.m. the next morning, April 1, 2004. He then drove the load to Tubular Technology, where it was unloaded. Immediately after unloading, Mr. Guillot then drove the tractor/trailer to University Medical Center to meet his wife. After Mr. Guillot met his wife, he drove the tractor/trailer to Cowboy's, where he parked it. He was followed to Cowboy's by his wife and son in their personal pick-up truck, which he entered into and returned to their home in Church Point. Later that day, after going to a counseling session with his wife and visiting a friend, Mr. Guillot returned to Cowboy's to drive his tractor/trailer home. However, on the way home, the subject accident occurred.

Alea's primary argument is that "it is clear Guillot had not returned his tractor-trailer to his home in Church Point, Louisiana which was his principal place of garage on the date of the subject accident and, as such, the Alea policy does not provide coverage for the accident in question." Alea's argument implies that the definition of "principle [sic] place of garage" can only be Mr. Guillot's home in Church Point. Appellees note, although the Alea policy contains an entire section of definitions, it does not specifically define the term "principle [sic] place of garage."

The record clearly establishes Ace and Mr. Guillot agreed Mr. Guillot would provide a policy of liability insurance for the protection of the public when he was not operating the vehicle for the business of Ace. The trial court reasoned as follows:

> What seems to me is that it was the intent of this exclusion to say, look when you're finished with Ace's business and you park that

-4-

vehicle, you're done. That's what it seems like they were trying to do. Did they do it rather inarticulately? I would suggest that the answer is yes. But I think that's what they intended. And since I have an obligation under the law to provide coverage anytime there is some doubt about it, I have to say the exclusion does not apply under these facts.

Richard Yandle, who handles insurance and safety matters for Ace, testified in his deposition that the term "garage" as used by the trucking industry is the geographical terminal to which a truck is assigned. He stated the garage of a tractor/trailer under lease to Ace is the geographical area of the terminal to which the equipment is assigned and to which the equipment and the driver report. Mr. Guillot's tractor/trailer was assigned to Terminal 64 in Broussard, which is commonly referred to as the Lafayette terminal. Mr. Guillot's lease with Ace is titled "Master Lease Agreement for Ace Terminal 64 Use Only." On the driver's daily log, which the U.S. Department of Transportation requires, a home terminal address of Broussard, Louisiana was listed.

Mr. Yandle further stated that once Mr. Guillot completed the delivery of his load in Lafayette, he was back in his home terminal, was off-duty and was then covered under the non-trucking liability coverage procured from Alea. Mr. Guillot confirmed that whenever he returned to Broussard, he called the dispatch and was placed off-duty.

Appellees also note the exclusion sought to be enforced by Alea specifically states it is only applicable to a "covered automobile while returning from any location after carrying or hauling property. . ." After dropping off his load at Tubular Technology, Mr. Guillot then drove to the hospital, where he met his wife, then drove to Cowboy's where the tractor/trailer was left for a number of hours. Mr. Guillot went home with his wife and engaged in a number of personal errands before

returning to his tractor/trailer. No property was hauled to either the hospital or Cowboy's.

Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975 (La.1991). If the language of an exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180; *Blackburn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99-1872 (La.App. 3 Cir. 8/23/00), 771 So.2d 175, *rev'd on other grounds*, 00-2668 (La. 4/3/01), 784 So.2d 637. Therefore, the trial court did not err in finding the Alea policy provided coverage.

Alea has also argued the terms of the policy limits its liability as the insurer of Mr. Guillot when multiple policies are maintained by Mr. Guillot. It references the following section of the policy:

> **D. Multiple Policies.** If the Insured or anyone else claiming under this Policy carries a policy of insurance issued by another insurer against a loss covered herein, such other insurance will always be primary and the indemnification policy issued by Alea hereunder will be deemed in addition to such other insurance should the other insurer seek indemnification as a result of any contractual arrangement. The Insured or anyone else claiming under this Policy shall not be entitled to recover any payment from Alea unless and until they recover an amount equal to the aggregate limits of all of such other policies. Under no circumstances shall this Policy become primary insurance because of the insolvency, bankruptcy of or refusal to pay by any of such other insurers.

In order for this exclusion to apply, there must be a showing that the person making the claim has a "policy of insurance issued by another insurer against a loss covered herein." In this case, the only persons making claims under the Alea policy are Mr. Guillot and the Robinsons. Ace has not made a claim against the Alea policy. There

has been no showing that Mr. Guillot carries a "policy of insurance" from "another insurer" against the "loss covered herein." The record is also void of any evidence that any other insured is seeking indemnification herein. As appellees note, "even if Ace was an insurer under a policy of insurance (which it is not), Ace is not seeking indemnification from Alea as a result of any contractual agreement." Accordingly, the "multiple policies" exclusion sought by Alea is not applicable.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, Alea London, Ltd.

**AFFIRMED.**